FIRST CALDWELL OIL COMPANY, A CORPORATION, APPELLANT, v. WALTER E. HUNT, RESPONDENT.

Submitted June 6, 1924—Decided January 19, 1925.

1. The written contract sued on in this case, *held*, to be an agreement of subscription to stock of a corporation, and not a contract for the purchase of said stock.

2. At the trial the jury were instructed that as there was no proof of any difference between the subscription price and the market price of the stock at the time when defendant refused to take and pay for it, nominal damages only could be recovered in any case—*Held* error, and that if the defense of fraudulent misrepresentation set up was not substantiated to the satisfaction of the jury, the plaintiff was entitled to recover the amount of unpaid subscriptions, with interest.

3. The jury having returned a verdict in favor of plaintiff for six cents, and there being a reversal on this appeal, *held*, that under the circumstances of the case the new trial should be at large, and not restricted to damages only.

On appeal from the Supreme Court.

For the appellant, *Smith & Slingerland*.

For the respondent, *Harry Unger*.

The opinion of the court was delivered by

PARKER, J.   Plaintiff sued to recover $3,000, the amount of a subscription to its capital stock (and interest), which was evidenced by a written subscription agreement signed by defendant, a copy of which agreement is set out below.   The defense was that plaintiff falsely, fraudulently and deceitfully represented to defendant, by and through its president, certain facts of and concerning the plaintiff and its property, which defendant believed to be true and relied upon, and which induced him to subscribe.   The case was tried at the Essex Circuit and result in a verdict in favor of the plaintiff and against the defendant for six cents damages, and plaintiff appeals to this court.

There are two grounds of appeal—(1) that the court erroneously charged the jury that if they found for the plaintiff it could only be for nominal damages of six cents;  (2) that the court refused to charge that the plaintiff was entitled to recover the amount of subscription ($3,000), with interest, unless the defendant had proved to the satisfaction of the jury all the elements respecting fraud referred to.

We find that it was error for the trial judge to limit the plaintiff's damages to six cents.   A reading of the charge makes it plain that, although the trial judge in his charge speaks of the defendant's undertaking as a "subscription" to stock, he failed to apply to it the settled rules relating to stock subscriptions, and treated the transaction as though it was an ordinary sale.   He charged that if the jury found the defense of fraud not made out, and that defendant had consequently breached his contract in refusing to take and pay for the stock, nevertheless the company was bound to prove its damage by reason of such breach, that the measure of damage was the difference between the market price and

the contract price, and, as the market price had not been proved, only nominal damages could be awarded in case the jury found for the plaintiff.

Such a rule of damages is quite inapplicable to a case of stock subscription, as will presently appear. For the respondent, however, it is argued that the contract was, in fact and law, a contract of sale, and that in principle the instruction was correct. But this proposition is plainly untenable.

The contract on its face shows the defendant's undertaking to have been a subscription, and not a purchase from the plaintiff. It is as follows:

"SUBSCRIPTION TO STOCK—FIRST CALDWELL CORPORATION.

The undersigned subscribes for and agrees to take 300 shares of Class A Capital Stock of the First Caldwell Oil Corporation, and hereby promises and agrees to pay for said stock as follows:

Twenty per cent. of such subscription on the demand of the Treasurer of the Corporation; 20 per cent. of the subscription within thirty (30) days from date hereof; 20 per cent. of the subscription within ninety (90) days from the date hereof; 20 per cent. of the subscription within one hundred and twenty (120) days from the date hereof.

Dated March 1, 1921.

|  |  |
|---|---|
| Name, | WALTER E. HUNT. |
| Street and No., | 296 Market Street. |
| City and State, | Newark, N. J." |

In this document the word "subscribes" appears once, and the word "subscription" six times.

If anything were wanting to show that the above-recited agreement was a subscription rather than a sale, it is supplied by what is appended to the agreement and written under the signature of the defendant, as follows:

"First Caldwell Oil Corporation reserves the right to reject the excess of individual subscriptions over 100 shares or to

*pro rate* any or all individual subscriptions in excess of 100 shares."

In 2 *Fletch. Cyc. Corp.*, § 520, it is laid down: "A contract of subscription to the stock of a corporation is a contract by which the subscriber agrees to take a certain number of shares of the capital stock of a corporation, paying for the same, or expressly or impliedly promising to pay for the same. The effect of such a contract, as we shall see, the company being in existence at the time of the subscription, and having accepted the same, and the subscription being unconditional, is to make the subscriber a stockholder in the corporation, and to bind him to pay for his stock in accordance with the terms of his contract."

In *Robson* v. *Fenniman Co.*, 83 *N. J, L.* 453, this court held that "where a person subscribes to the stock of a corporation, and he is admitted to membership in the corporation on the strength of his subscription, and thereafter exercises all the rights of a stockholder therein, his obligation to pay for the share is fixed; and this is so, although no certificate for such shares has ever been issued to him or to anyone standing in his right." See, also, *Grosse Isle Hotel Co.* v. *I'Anson's Exrs.*, 42 *Id.* 10; 43 *Id.* 442; *Storage Co.* v. *Assessors*, 56 *Id.* (at *p.* 393).

Demand in writing was made upon the defendant by the treasurer of the plaintiff company by letter, as follows:

"Relative to the 300 additional shares of Class A stock, which you subscribed for in the First Caldwell Oil Corporation, we will thank you to make payment, as follows: First payment, $600, April 15, 1921; second payment, $600, May 15, 1921; third payment, $600, June 15, 1921; fourth payment, $600, July 15, 1921; fifth payment, $600, August 15, 1921."

Besides, the treasurer made verbal demand for payment, which was refused by the defendant.

The trial judge therefore erred in instructing the jury, as follows: "The plaintiff has not offered the stock to the defendant and still has it in its possession; therefore, its measure of damages is the difference between the subscrip-

tion price and the market price at the time of the breach, and that has not been proved, so the result is that if the plaintiff can recover anything it can recover six cents and no more—that is, assuming, of course, that the jury find that the plaintiff is entitled to recover anything." As we have said, he mistakingly treated the agreement as a contract for sale, which was breached, instead of a subscription agreement, which was violated. This fundamental error requires a reversal, and makes it unnecessary to consider whether, even if the transaction had been an ordinary sale, tender was waived or excused by the flat refusal of defendant to receive and pay for the stock. See *Thorne* v. *Mosher,* 20 *N. J. Eq.* 257; *Crosby* v. *Wells,* 73 *N. J. L.* 790, 802; *Chess* v. *Vockroth,* 75 *Id.* 665, 675; *Trenton Street Railway Co.* v. *Lawlor,* 74 *N. J. Eq.* 828.

It follows also that the court erred in refusing to charge "that the jury is to weigh all of the evidence in the case, and if it is satisfied that the defendant subscribed $3,000 worth of stock in the plaintiff company, the plantiff is entitled to recover the amount of such subscription with interest, unless the defendant has proved to the satisfaction of the jury all the elements respecting fraud referred to above."

The judgment will therefore be reversed, to the end that a *venire de novo* issue.

But it is further argued for plaintiff-appellant that, in view of the practical adoption by this court in a number of cases of rules 131 and 132 of the Supreme Court, made applicable to certain appeals in that court by rule 147, our action in the case at bar should be limited to the award of a new trial on damages only, leaving the finding of liability in full force. The cases on this phase of the practice are collected in *Robinson* v. *Payne,* 99 *N. J. L.* 135. But we think that in the case at bar the new trial should be unrestricted. Rule 132, dealing with cases where the "damages are excessive or inadequate," seems hardly intended to apply to cases where a fundamentally erroneous rule depriving plaintiff, in effect, of all damages, is laid down by the trial court, and rule 131, restricting new trial, is limited to cases in which

the "question or questions with respect to which the verdict or decision is found to be wrong" is, or are, "separable."

In this aspect, the question would seem to be whether when a six-cent verdict is returned for the plaintiff, under an erroneous instruction, that only a nominal verdict could be rendered in any case, and when that instruction is based on a fundamentally wrong theory of the case, we ought to say on plaintiff's appeal that that verdict finally settles the question of liability, because that is separable from the amount of damages. In our view no such ruling should be made in this case. What the jury considered, in view of the instructions given, was whether plaintiff was entitled or not to recover nominal damages only on what was laid before them as defendant's contract to purchase stock. Their verdict was thus not based on a subscription contract, and it cannot reasonably be said that if such a situation had been laid before them the result would have been the same. In *Flammer* v. *Morelli,* 126 *Atl. Rep.* 307, we said, following cited decisions, that a verdict erroneous on the theory adopted in the trial court cannot be sustained on a theory excluded in that court, and which the jury had no opportunity to consider. That rule seems applicable in the case at bar. To put it in another way, the verdict for the plaintiff was so tied up to the nominal amount and a wrong theory of recovery, that the rule of separability is inapplicable.

But even if the rule were applicable, this is not a case in which to apply it. As we said in *Robinson* v. *Payne,* 99 *N. J. L.* 135, 142, the power to confine the new trial to damages only is one which rests in the sound discretion of the court. We further said that it should be "exercised with caution, with due regard to the rights of both parties, and only in those cases where it is certain that the error which resulted in excessive or inadequate damages did not affect the other issues." Not only might the error as to damages in this case have affected the issue as to right of recovery, but that very issue, as we have pointed out, was put on a false ground.

The judgment will be reversed, to the end that a new trial be had on all the issues in the case.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-
CHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMP-
BELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MC-
GLENNON, KAYS, JJ.   15.

*For reversal*—None.